## THEODORE W. YOUNG v. JAMES Y. WILSON, BUILDER, AND FRANCIS RITTENHOUSE, OWNER.

1. The contract the filing of which, under the lien law, protects against the lien of other creditors, must be between parties who in verity, and not in form merely, hold towards each other the relation of contracting parties. It must be a real, not a fictitious bargain.

2. It is a perversion of the act to use it as a scheme to protect the contractor from the payment of his debts due material-men.

3. A paper filed as a contract may serve as a consent in writing of the legal owner to erect the building, when, by its terms, the expense is not to be borne by the licensee.

In case.   On mechanics' lien.   Case certified from Union Circuit.

Argued at June Term, 1881, before BEASLEY, CHIEF JUS-TICE, and Justices DEPUE, SCUDDER and KNAPP.

For the plaintiff, *James J. Bergen* and *R. V. Lindabury.*

For the defendant Wilson, *J. R. Emery.*

For the owner, *A. B. Butts*

The opinion of the court was delivered by

KNAPP, J.   We are not called upon, in this case, to decide or express any opinion upon the question whether an equitable estate of any sort is subject to lien under our mechanics' lien law.

The point certified for an advisory opinion is whether, under the claim as filed and the proceedings thereon, the building and lands in question are liable for plaintiff's debt. The claim is filed against the legal, not the equitable estate.

The facts in the case may be briefly stated as follows : Wilson purchased and paid for the lands against which the lien claim is filed.   For his own interest and protection against creditors, he caused the title to be taken in the name of Sheppard L. Stewart.   Wilson erected a building on the lands, and in so doing contracted debts which remain unpaid.   After the completion of the building, Stewart, at the request of Wilson, conveyed the premises to the defendant Rittenhouse.   On the day Stewart took the title, he and Wilson executed a contract in writing, by the terms of which Wilson agreed to build

upon the lands a house, after a prescribed model, and furnish all the material for the same, for $2250, Stewart agreeing to pay Wilson by a mortgage to him for that amount upon the lands. Wilson had commenced the building before Stewart took the conveyance and before the contract was executed. The contract was filed in the county clerk's office. The claim is filed for material purchased by Wilson for the building.

Regarding Stewart as causing the building to be erected, the contract and its filing was, under the second section of the lien law, in form such as to bar the lien of all creditors of Wilson for labor performed or material furnished in its construction, and Wilson alone would be given a right of lien. The question is whether, under the circumstances of this case, such was its legal effect as against the plaintiff and similar creditors of Wilson.

The provisions of this section were framed to protect the land-owner, in building upon his lands, from payment beyond the stipulated price for the work which he contracts for ; and unpaid creditors of an irresponsible contractor are given a claim only on the consideration money remaining unpaid to the contractor, through the provisions of the third section.

The law seems to suppose, what commonly is the fact, that the owner and contractor have dissimilar and opposing interests in such a relation ; that the land-owner is having erected upon his lands, for their improvement, a building, and employs, to that end, the agency of the contractor, for a compensation to be paid. The lien of others enforced against the owner is to his loss, for his lands pay the contractor's debts. The filed contract is, in such case, his legitimate protection. I think the circumstances of the case clearly show that Stewart and Wilson did not hold, or regard themselves as holding, towards each other the relation of contracting parties, as contemplated in the second section referred to. Wilson put the legal title to the lands in Stewart's name, to save it from Wilson's creditors. Wilson paid for and owned the entire beneficial interest in the lands, and it was of no sort of

concern to Stewart what buildings were erected upon the
property, or what liens against it might be created.   Despite
the appearance attempted to be given to these transactions by
the solemn form of contract, Stewart was not erecting the
building ; Wilson was doing it of his own will and purpose,
and for his own benefit.   He had determined upon its con-
struction, and commenced it before he had the title conveyed
to Stewart.   The contract to be filed as a protection against
liens is a real, not a fictitious, bargain on the part of an
owner who, with a purpose himself to erect a building, em-
ploys, for a price, the agency of another to do it for him ;
and a contract in form for building which, in effect, is merely
a license to another to build for himself, whether he have any
interest or estate in the lands or not, is not the contract con-
templated in the second section of the act, the filing of which
is a protection against liens. The rights of parties in the latter
case are provided for in the fourth section.   Wilson was,
within the meaning of the fourth section of the lien law,
erecting a building upon the land *legally* of another.   No one
can for a moment believe that the so-called contract was in-
tended by the parties to have any binding force upon them
as a contract.   The *cestui que trust* agreed to erect a building
upon lands really his own, and take a mortgage on those
lands for compensation.   What interest did Stewart have, or
think he had, to protect by filing a written contract ?   No
one had so much interest in avoiding liens as the one who
contracted the debts, and none could have less than the holder
of the legal title. The enforcement of liens could only compel
Wilson to pay his debts.   If the mortgage named as the price
of the building being given, Wilson had failed to build,
Stewart would have suffered no loss ; nor would Wilson have
been harmed if, on completing the building, the stipulated
mortgage had never been executed.   Stewart served as the
mere conduit of the title from Wilson's vendor to his vendee.

   I think it is manifest that Stewart had neither interest nor
purpose to build on these premises ; and notwithstanding the
contract, the erection of a building there cannot be considered

as his act or attributed to him.    Wilson was in that the sole actor.   The contract may serve as a license to build, but as an agreement between the parties, it is the merest fiction, and its filing should afford no more protection against liens than filing one made between Wilson and an entire stranger.

If the design of the parties in this transaction be looked into, it is impossible to regard it in any other light than that of a device concocted between the parties to it, to debar those who should thereafter trust Wilson for labor or material for his building from collecting the debts so contracted.    Upon this ground, I should be willing to hold that the contract and its filing is, as against such creditors, a nullity.

Under the view above expressed—that Wilson, and not Stewart, caused the erection of the building—the land would still be free from the lien, unless Stewart, who was the legal owner at the time, gave, in conformity with the fourth section of the lien law, his consent in writing to Wilson to erect the building.    But upon this point there can be no difficulty, as the paper filed as a contract embodies a sufficient consent for that purpose.

The acceptance of such paper as a consent is in entire conformity to the ruling in the Court of Errors in the case of *Gervey* v. *Slay,* 13 *Vroom* 168.    In that case the consent relied on was, first, a condition in a lease that the tenant should make all necessary repairs at his own cost and expense, and, second, a writing by the landlord permitting the tenant to make certain alterations at his own cost and expense.    It was held that where it appeared on the face of the writing relied upon as a consent to repair, that such repairs were not to be done at the expense of the owner, it was not a consent within the meaning of the eighth section of the act, the language of which, in this respect, is like the fourth section. Here no such objection exists against the use of the contract as a consent.

The defendant Mrs. Rittenhouse, the present owner, became the purchaser of this land from Wilson, and it was conveyed to her by Stewart after the filing of the written document;

and it is claimed, in her behalf, that she took her title with notice that the property was protected against liens like that in suit. But the case shows that, at the time of her purchase, she was acquainted with the relations of Wilson and Stewart to the property and to each other. She was chargeable with knowledge of the character and effect of the paper placed on file as a contract, and stands in the same position as, and with no greater rights than, her grantor.

The question of the priority of liens between the present holder of the mortgage and the lien-claimant is not before us for consideration. The assignee of the mortgage is not a party to these proceedings.

The Circuit Court should be advised that the plaintiff is entitled to his, lien upon the premises, as claimed.